UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGG BOCHAT and PHILIP SIMONS,<br><br>Plaintiffs,<br><br>v.<br><br>AMBIT ILLINOIS, LLC, VISTRA CORP, and VOLT ASSET COMPANY, INC.,<br><br>Defendants. | No. 24 CV 03116<br><br>Judge Manish S. Shah |

### MEMORANDUM OPINION AND ORDER

Defendants Ambit Illinois, LLC, Vistra Corporation, and Volt Asset Company, Inc., are third-party natural gas suppliers that market themselves as less-expensive alternatives to traditional utility providers. In 2009 and 2010, plaintiffs Gregg Bochat and Philip Simons signed up for Ambit's guaranteed savings plan, which promised that plaintiffs' yearly gas costs would be at least 1% less than what their existing utility would have charged, or Ambit would make up the difference.

In 2012, Ambit mailed plaintiffs new terms of service, which required plaintiffs to renew the guaranteed savings plan yearly or be moved into Ambit's more expensive variable plan. The letters accompanying the new terms told plaintiffs that they could either renew their current plan or select a different plan before the new terms went into effect. When plaintiffs did not respond to the notice, Ambit moved plaintiffs from the guaranteed savings plan to its variable plan, which cost plaintiffs much more. Plaintiffs bring this case alleging that Ambit impermissibly attempted to amend their contracts, and that Ambit breached their contracts by switching plaintiffs to the

variable plan and failing to pay plaintiffs the 1% guarantee. Defendants move to dismiss.

I.   **Legal Standards**

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

II.   **Facts**

Illinois residents can obtain natural gas from traditional utility providers or third-party energy companies, such as defendant Ambit Illinois, LLC.[1] [21] ¶¶ 1–2, 43. Ambit marketed itself as a less-expensive alternative to existing providers. [21] ¶ 3. Ambit offered Illinois consumers a guaranteed savings plan that promised customers' yearly energy costs would be at least 1% less than what the customers' existing utility would have charged, or Ambit would make up the difference. [21] ¶¶ 3, 5.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [21] ¶ 1. The facts are taken from plaintiffs' amended complaint, [21], and notices attached to Ambit's motion to dismiss, [25-1], [25-2]. Plaintiffs argue that it is inappropriate to consider these notices at the motion to dismiss stage. [26] at 7–8. But documents referred to in a complaint that are essential to a plaintiff's claim may be considered on a motion to dismiss. *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018). Plaintiffs refer to the mailed notices in their complaint and the notices are essential to whether plaintiffs' contract claims succeed. *See* [21] ¶¶ 7, 12, 55, 57.

Plaintiffs Philip Simons and Gregg Bochat signed up for the guaranteed savings plan in 2009 and 2010 respectively. [21] ¶¶ 25, 28. The parties' contracts provided:

> Ambit Energy reserves the right to amend or terminate this Agreement due to changes in regulatory rules and requirements, any and all applicable laws, or Nicor's Customer Select tariff. If Nicor materially changes its Customer Select Program, Ambit Energy reserves the right to terminate this contract, without recourse to either party. Ambit Energy reserves the right to amend this Agreement at a later date. If Ambit Energy materially changes the provisions of this Agreement to the disadvantage of the Customer, Ambit Energy will provide 45 days notice prior to the effective date of such material change and provide the customer with 45 days to opt out of the new provisions at no cost, beginning on the postmarked date of the material change notice sent by Ambit Energy to the Customer. If the Customer does not respond to the material change notice within the 45 days to notify Ambit Energy that it elects to opt out of this Agreement within the Customer opt out time period, this Agreement will continue in effect under the amended terms of service.

[21-1] at 3; [21-2] at 3. Bochat's contract also provided that "Ambit may amend the terms of this Agreement at any time, consistent with any applicable law, rule or regulation, by providing notice to [Bochat] of such amendment at least thirty (30) days prior to the effective date thereof." [21-2] at 4.

In 2012, Ambit sent plaintiffs mailers with updated terms of service. [21] at ¶¶ 12, 55; [25-1]; [25-2]. Ambit sent the letters more than 45 days before the new terms of service would go into effect. [25-1] at 2; [25-2] at 2. The new terms required plaintiffs to renew the guaranteed savings plan annually, and if they did not renew, Ambit would move them to its variable plan. [25-1] at 3; [25-2] at 3. The variable plan rates were much higher than those of the local utilities. [21] ¶ 10. The letters told

3

plaintiffs that they could either renew their current plan or select a different plan, but did not specifically point out the new renewal provision. [25-1] at 2; [25-2] at 2.

Plaintiffs were automatically defaulted into the variable plan and were charged substantially more than they would have been under the savings plan. [21] ¶¶ 8, 10, 26, 29, 47. Plaintiffs allege that they did not know their plan had changed because Ambit lulled customers into thinking they would remain on the guaranteed savings plan. [21] ¶ 20. Plaintiffs also say they could not have reasonably known that they were entitled to, but not receiving, annual reimbursement checks. [21] ¶ 51.

Plaintiffs bring a breach of contract claim, alleging that Ambit impermissibly attempted to amend the contracts when no "changes in regulatory rules and requirements, any and all applicable laws, or Nicor's Customer Select tariff" had occurred. [21] ¶ 11. Plaintiffs also allege that Ambit, even if it were permitted to amend the contracts, did not provide the "material change notice" required by the contracts. [21] ¶ 12. Plaintiffs claim that their original contracts remained in effect, and Ambit breached its contractual obligations by not reimbursing plaintiffs the 1% guarantee annually. [21] ¶ 10.

### III. Analysis

Plaintiffs' breach of contract claims rely on the premise that their original contracts remained in effect, despite Ambit's attempt to amend them.[2] Thus, the

---

[2] This court has subject matter jurisdiction over plaintiffs' claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which creates federal jurisdiction if "(1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant; and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). CAFA

parties' dispute centers on whether Ambit was permitted to amend the plaintiffs' contracts in 2012, and if so, whether Ambit properly followed the contracts' amendment process.

### A.     Right to Amend

The parties' contracts contained at least two provisions that addressed amendment. First, Ambit "reserve[d] the right to amend or terminate this Agreement due to changes in regulatory rules and requirements, any and all applicable laws, or Nicor's Customer Select tariff." [21-1] at 3; [21-2] at 3. And second, Ambit "reserve[d] the right to amend this Agreement at a later date." *Id.*

Plaintiffs argue that the first provision, permitting Ambit to amend "due to changes in regulatory rules and requirements, any and all applicable laws, or Nicor's Customer Select tariff," limited Ambit to amending only if such changes occurred. [26] at 3. Ambit argues that the second provision, "Ambit Energy reserves the right to amend this Agreement at a later date," was an unqualified reservation of the right to amend the contracts. [25] at 10–11.

"The principal objective in construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract." *Guterman Partners Energy, LLC v. Bridgeview Bank Grp.*, 2018 IL App (1st) 172196, ¶ 51. In interpreting a contract, a court presumes that "all provisions were intended for a

---

jurisdiction is satisfied because plaintiffs allege that the class includes more than 100 class members; minimal diversity is met because at least one member of the class is a citizen of a different state than a defendant; and the amount in controversy alleged exceeds $5,000,000. [21] ¶¶ 24, 27, 33–34, 38, 78; [1] ¶¶ 14–17. The parties agree that Illinois law applies to plaintiffs' claims. *See* [25] at 6; [26] at 3.

5

purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions." *Id.* A court should not "interpret a contract in a manner that would nullify or render provisions meaningless." *Id.*

While inartfully drafted, the amendment provisions here do not create a conflict or ambiguity. Plaintiffs construe the first provision as an "express limitation" that banned all amendments other than when one of the enumerated changes occurred. [26] at 4. But the list of three reasons for amendment does not say that they are the only reasons the parties may amend. [21-2] at 3; [21-2] at 3. "Due to" is not synonymous with "only if." Ordinarily, parties to contracts can amend them for any reason (so long as the requisites for contract formation exist). *F.R.S. Dev. Co. v. Am. Cmty. Bank & Tr.*, 2016 IL App (2d) 150157, ¶ 33 ("Parties to a contract are generally free to modify the contract as long as the modification does not violate the law or public policy."). Without text limiting the basis for amendment to only certain reasons, there is no basis to read the list as abrogating either party's right to renegotiate and bargain for new terms with consideration.[3]

True, the contract does not say that Ambit reserves the right to amend for reasons "including" the three items, which would better convey a nonexclusive list, and a nonexclusive reservation of rights may seem superfluous if parties can always exchange new promises for new consideration. But identifying specific albeit

---

[3] Plaintiffs' *ejusdem generis* argument also fails because it erroneously relies on the premise that the first provision defined the "right to amend" as limited to the three enumerated reasons alone. *See* [26] at 4–5. The doctrine also does not apply neatly here. *Ejusdem generis* seeks to identify a common theme among of a list of items to provide a limitation on more general, catchall language that follows that list. The amendment provisions here do not contain a list of specific items followed by a general catch all.

nonexclusive reasons warns a customer to be on the lookout for conditions that could prompt Ambit to renegotiate or terminate the contract. In any event, the absence of language of exclusivity is unambiguous.

Plaintiffs also argue that the second provision was simply a timing provision, giving Ambit flexibility as to when it could amend (as opposed to terminate) in response to one of the previously enumerated changes. [26] at 3–4. Ambit says that the first provision already provided when Ambit could amend in response to one of the listed changes: Ambit could amend "due to" the changes, in other words, after and in response to the specified changes. *See* [21-1] at 3; [21-2] at 3. Although "due to" necessarily suggests a sequence of events, it is the language of causation, not deadlines. Similarly, the second provision allows for amendment "at a later time" suggests a precipitating event—later than something. In context, the second provision must refer to the timing of an amendment versus termination due to a change in regulation, laws, or tariffs (the only referent against which "later" could apply). But that does not mean that the first provision limits the reasons Ambit could ever seek amendment. It is the absence of any text suggesting exclusivity that gives Ambit the right to seek an amendment for any reason, subject to the bargained-for procedures to consummate an amendment.[4]

---

[4] Bochat's contract has a third reference to amendments: "Ambit may amend the terms of this Agreement at any time, consistent with any applicable law, rule or regulation, by providing notice to Customer of such amendment at least thirty (30) days prior to the effective date thereof." [21-2] at 4. This term clearly provides that Ambit may amend Bochat's contract for any lawful reason.

Ambit was allowed to try to amend both plaintiffs' contracts in 2012 despite there being no change in regulatory rules, laws, or tariff.

## B. Amendment Process

Plaintiffs argue that, even if amendment were permissible, Ambit did not follow the contractually agreed upon process for material changes. [26] at 5-8. When "materially chang[ing] the provisions of this Agreement to the disadvantage of the Customer, Ambit Energy [had to] provide 45 days' notice prior to the effective date of such material change and provide the customer with 45 days to opt out of the new provisions at no cost." [21-1] at 3; [21-2] at 3.

A material term is "a contractual provision that deals with a significant issue such as price, payment terms, duration, or the duty to be performed." *Gordon v. Landfill, LLC*, 2021 IL App (5th) 200383-U, ¶ 21 (unreleased for publication in permanent law reports and subject to change until published) (citing Black's Law Dictionary (2001)). Ambit frames the amendment as simply adding a renewal process that was not material to the contract. [25] at 12; [27] at 11–12. But this renewal process permitted Ambit to switch plaintiffs from the guaranteed savings plan to one which could charge consumers much more. As such a change would result in higher rates, *i.e.*, contractual costs, the renewal provision was material.

Plaintiffs admit that Ambit sent them mailers in 2012 that included the new terms of service, [21] ¶¶ 12, 17, 55, 57, but argue that these mailers were insufficient to put them on notice of the material change, [26] at 6. They allege that the mailers appeared as junk mail and were designed to ensure customers did not read or notice the renewal term or amended agreement. [21] ¶¶ 17, 57. Ambit's letters told plaintiffs

8

of the new terms of service, when the terms would go into effect, and gave plaintiffs the option to renew their current plan or select a different one. [25-1] at 2; [25-2] at 2. Plaintiffs emphasize that the letters did not point out the new renewal requirement, did not use the term "material change," and did not tell plaintiffs that they would be shifted to a new plan if they did not renew the savings plan. [26] at 7–8.

While the letters could have highlighted the new renewal provision better, the contracts do not specify that Ambit needed to provide more notice than what they sent. *See* [21-1] at 3; [21-2] at 3. The letters pointed out the terms were "updated" or "new," indicating to plaintiffs that the terms had changed. *See* [25-1] at 2; [25-2] at 2. The letters also attached the new terms giving plaintiffs the opportunity to read them. *See id.* The updated terms of service were only three pages long with the renewal provision on the first page. [25-1] at 3–5; [25-2] at 3–5. Even if plaintiffs did not read the updated terms, a "contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome." *See Hill v. Gateway 2000, Inc.,* 105 F.3d 1147, 1148 (7th Cir. 1997) (holding plaintiffs who skimmed statement of terms accompanying ordered product but not closely enough to discover its arbitration clause were still bound to the terms).

In line with its contractual obligation, Ambit sent the mailers more than 45 days before the new terms of service went into effect and allowed plaintiffs to opt out by either renewing their plan, selecting a new one, or presumably cancelling their contract. [25-1] at 2; [25-2] at 2; [21-1] at 2 (permitting cancellation at any time); [21-

2] at 2 (same). Plaintiffs had a reasonable opportunity to reject Ambit's offer, but nonetheless continued to use Ambit's services. *See Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (holding letter that clearly provided a mechanism for rejecting updated terms and conditions provided a reasonable opportunity to reject).

Plaintiffs did not respond to Ambit's notice. "[S]ilence can constitute an acceptance of an offer when it is reasonable, because of prior dealings or otherwise, that the offeree should notify the offeror if he does not intend to accept the offer." *Ragan v. AT&T Corp.*, 355 Ill.App.3d 1143, 1149 (5th Dist. 2005). Under the parties' contracts, silence in response to a material change notice is considered acceptance: "If the Customer does not respond to the material change notice within the 45 days to notify Ambit Energy that it elects to opt out of this Agreement within the Customer opt out time period, this Agreement will continue in effect under the amended terms of service." [21-1] at 3; [21-2] at 3. Plaintiffs' continued use of and payment for Ambit's services without protest also constituted acceptance of the updated terms. *See, e.g., Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713–14 (7th Cir. 2019) (plaintiffs' silence in response to notice granting time to review agreement and method to opt out constituted acceptance of policy changes); *Boomer*, 309 F.3d at 415 (customer's continued use of phone service constituted acceptance of new service terms when letter mailed to him stated that continued use would mean acceptance of the new terms); *Hill*, 105 F.3d at 1148–49 (plaintiffs' silence constituted acceptance of form contract included in product box which plaintiffs accepted). Thus, plaintiffs entered into the amended terms of service.

Under the new terms, Ambit permissibly moved plaintiffs to the variable plan. Because plaintiffs' claims rely on the faulty premise that the original contracts remained in effect, they have failed to state a claim for breach of contract.[5]

## IV. Conclusion

Defendants' motion to dismiss, [25], is granted. Enter judgment and terminate civil case.[6]

ENTER:

Manish S. Shah
United States District Judge

Date: January 27, 2027

---

[5] I do not reach the parties' arguments on waiver or the statute of limitations.

[6] Plaintiffs' claims are dismissed with prejudice because amendment would be futile; a new complaint could not change the contract's unambiguous terms or plaintiffs' acceptance of the new terms of service.

11